SAMFORD, J.
 

 The defendants were jointly indicted on a charge of manufacturing whisky and possessing a still. The evidence to convict these defendants consisted of the testimony of one Lee Hels, and some slight corroboratory evidence by a deputy sheriff. The witness Hels said he was “loafing about” on Sunday and saw defendants “down there” and “seen some smoke down there.” “Saw a pot and a worm and a barrel down there.” “Saw them at work down there about three or four hours.” . “They pitched the still worm behind the bush.” “Down there” proved to be the wash place at a spring about 75 yards from the house where one of the parties lived, and this witness further said he did not see any whisky,
 
 only
 
 heard them talking about it; didn’t know whether any whisky was actually made or not, that when he got to the place in the course of his “loafing about,” it was about 2:30, and that none of the parties ever saw him. Hels put the place about 200 yards from the house, but the deputy sheriff said 75 yards, which is doubtless nearer correct. The time was on Sunday, and all of the parties at the wash place were close relations and the well and spring were used .for furnishing all the water used at the house. Upon cross-examination this witness said: “I don’t know whe.ther it was whisky or not; all I saw was a wash pot, á coil, and a lard tub.” And then he added: “He had a barrel; had beer in it, I suppose.” This was the only witness who claimed to have seen the parties at the place, which was shown to have been owned by the mother-in-law of one of the defendants, who also resided there. It also appears that this witness was not summoned before the grand jury until after the lapse of a year.
 

 To corroborate this witness the state introduced Leath, a deputy sheriff, who, testifying two years after the occurrence, said that immediately after the time testified to by Hels, he went “over there,” and at ¿he place he found a wash pot and a lard tub which had been whittled sharp at the end until it fit the top of that wash pot; that — ■
 

 “At the top of the tub there was an auger hole about an inch in diameter where the pipe fit in for the arm of the cap, and it passed around it.”
 

 There was a/notion to exclude this statement on general grounds. The court properly overruled this motion as to the entire statement. A part of it was relevant, and a part being relevant, a motion to exclude the whole was properly overruled.
 

 This witness was then allowed to testify, over timely objection and exception, that he “smelled” the odor of beer in the cap. On cross-examination this witness admitted that further than the time was in the summer of 1922, he did not remember what time it was; that he never found any one there, made no arrest, and made no case against the parties. It will be observed that while the evidence makes a jury question as to both a manufacture and possession, the testimony is of such a vague and unsatisfactory nature as to impress the judicial mind with a lack of sincerity and perhaps a motive in the prosecution, not here disclosed. It may be that, had the defendants - made timely motion for a new trial, the learned and just judge who tried this- case would have set the verdict aside. As to that, we can only surmise, as no such motion invoking decision was made. However, we are of the opinion that the court erred in permitting the deputy sheriff to testify as to the smell of the tub. In Whetstone v. State, 19 Ala. App. 331, 98 So. 216, we did hold that smell, being one of the five senses of man, by and through which information is conveyed to the mind, whenever an article has such a distinct odor as that it may be so identified and the witness knew the odor, he might so testify. It will be observed that in the Whetstone Case, supra, the decision was grounded on the qualification of the witness. In that ease the witness was qualified. In the instant case the witness did not qualify as a “smeller,” i. e., he is not shown to have known the smell of beer, or, if beer, what kind of beer, or, in the absence of beer from a barrel or tub formerly containing beer, whether it left an odor, or how long such odor would remain. The sense of smell is a perfectly legitimate manner of obtaining information from which to testify, but such testimony must be carefully safeguarded by legal rules.
 

 There was no error in the refusal of the court to exclude from the jury the questions of the solicitor and the answers of the defendant Sam Anderson. Counsel in the conduct of the examination of witness on the trial of the case must be relied upon to act within the rule of ethics, until the contrary is made to appear, and we cannot say from
 
 *507
 
 this record that the solicitor did not act in perfect good faith when he aske(l the questions and requested Mr. West to go under the rule. Moreover, the answers to the questions were entirely favorable to defendant.
 

 While the error hereinabove pointed out is somewhat technical, in view of the whole testimony we feel that the error was prejudicial, and for that reason the judgment is reversed and the cause is remanded.
 

 Reversed and remanded.